NOT FOR PUBLICATION

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

_____
                                      :
HUSSAIN KAREEM.,                      :
                                      :
            Plaintiff,                :
                                      :
                                      :         Civil No. 20-7846 (RBK/MJS)
            v.                        :
                                      :         **OPINION**
PHH MORTGAGE CORPORATION, et          :
al.,                                  :
                                      :
            Defendants.               :
_____

**KUGLER**, United States District Judge:

Presently before the Court is Defendant's Motion to Dismiss (Doc. No. 10) the

Complaint pursuant to Rule 12(b)(6) and Plaintiff's Motion to Amend the Complaint (Doc. No.

17) Pursuant to Rule 15(a)(2). For the reasons set forth below, Defendant's Motion to Dismiss is

**DENIED** as moot and Plaintiff's Motion is **GRANTED** in part.

## I.      BACKGROUND

In what truly amounts to a kitchen sink approach, Plaintiff asserts at least ten claims

against Defendants PHH Mortgage Corp and NewRez arising out of a notice of servicing transfer

letter and a mortgage loan delinquency notice. Although difficult to follow, this Court has

attempted to distill Plaintiff's allegations into a coherent narrative.

### A.  Factual Background[1]

_____
[1] The Court relies on the allegations in Plaintiff's Second Amended Complaint along with the documents
Defendants attached to their motion to dismiss to rule on this motion. *See In re Rockefeller Ctr. Props. Sec. Litig.*,
184 F. 3d 280, 287 (3rd Cir. 1999) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3rd Cir.
1997).

1

In July of 2006, Plaintiff Hussain Kareem, a resident of Georgia, executed an adjustable rate note with American Brokers Conduit in the amount of $159,200 in order to refinance his home. (Doc. No. 17-2, Second Am. Compl. at 2);[2] (Doc. No. 10-2, Exhibit A). To secure this loan, Mr. Kareem executed a security deed for his property in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"). (Doc. No. 10-2, Exhibit B). Over two years later, in September of 2008, Mr. Kareem attempted to rescind his loan under an alleged Truth in Lending Act rescission procedure and halted all payments on his mortgage until he was informed of the outcome. (Doc. No. 17-2, Second Am. Compl. at 2). He presumed his mortgage debt was cancelled by the rescission. (*Id.*). In October of 2014, MERS assigned the security deed to CitiBank. (Doc. No. 10-2, Exhibit C).

Ocwen Loan Servicing, LLC ("Ocwen") serviced Mr. Kareem's loan until its merger with PHH Mortgage Corporation ("PHH") on June 1, 2019. (See Doc. No. 17-3, Exhibit A). PHH is now the servicer of the loan. (*Id.*). On June 4, 2019, Mr. Kareem received a letter from PHH informing him of his new mortgage servicer:

> the servicing of this mortgage has been transferred, effective 6/1/2019. This means that on or after this date, PHH will be collecting the mortgage payments. The transfer of servicing does not affect any term or condition of the mortgage other than terms directly related to the servicing of the account. Ocwen Loan Servicing, LLC ("Ocwen") was collecting the payments. Ocwen stopped accepting payments received after 5/31/2019. PHH Mortgage Services ("PHH") will collect the payments going forward. PHH started accepting payments received on 6/1/2019.

(Doc. No. 17-3, Exhibit A). Included with this letter was an addendum which restated the current status and terms of the loan. (Doc. No. 17-3, Exhibit B). It indicated that the escrow account balance at the time of servicing transfer was -$17,050.57, and that a monthly payment of $580.51 was due on July 1, 2019. (*Id.*).

---

[2] Because Plaintiff did not use paragraphs, we refer to page numbers when citing to the second amended complaint.

Thereafter, Mr. Kareem submitted payments in the amount of $581.00 for the months of July, August, and September. (Doc. No. 17-3, Exhibit C, D, E, and F; Doc. No. 21, Exhibit G). In July of 2019, Mr. Kareem retained an attorney to advise him of his rights. (Doc. No. 21-1, Exhibit L). In August and September of 2019, PHH returned all payments to Mr. Kareem except for his July payment and informed him that his payments were "returned as [they were] insufficient to bring [his] account current." (*Id.* at Exhibit F and G); (Doc. No. 21, Exhibit H). At some point in late October or early November of 2019, Mr. Kareem also received a delinquency notice from Defendants. (*See id.* at Exhibit I). It indicated that he was delinquent on his mortgage loan by over 3000 days and needed to tender $108,243.69 in order to bring his account current. (*Id.*).

On November 6, 2019, Plaintiff received another letter from Defendants informing him again that his payments had been returned because they were insufficient to cure the default on the account and that his account "was assessed with Lender Placed Insurance by Ocwen." (Doc. No. 21, Exhibit H). This letter further provided that "if we do not receive proof of insurance on the property for any given period of time, we . . .  assess Lender Placed Insurance (LPI) or Force Placed Insurance (FPI) on the property. This will result in a negative escrow balance and an escrow payment will be added to the monthly payment amount in order to collect the escrow advance." (*Id.*). Around this same time, Mr. Kareem also employed the use of a HUD counselor to research and advise him of his rights. (*Id.* at Exhibit M).

In February of 2020, Mr. Kareem was sent a letter informing him that PHH Mortgage had retained a law firm—Aldridge Pite, LLP—in connection with his loan. (*Id.* at Exhibit J). This same law firm sent another letter to Mr. Kareem, dated May 22, 2020, indicating that his mortgage loan debt was immediately due and payable in full. (*Id.*). It also indicated that a

foreclosure sale for his property was scheduled to take place on July 7, 2020. (*Id.*). On May 27, 2020, Plaintiff sent a letter to Defendants, entitled "Qualified Written Request," claiming they erred by failing to accept his payments and credit them to his mortgage loan account. (*Id.* at Exhibit K). The letter included Plaintiff's name and loan account number. (*Id.*). Defendants eventually responded to Plaintiffs letter but allegedly failed to disclose the current owner of the mortgage.

### B.  Procedural History

On June 26, 2020, Plaintiff filed a complaint in this Court asserting claims against Defendant PHH Mortgage Corp for breach of contract, violation of the Fair Debt Collection Practices Act, violation of the Real Estate Settlement Procedures Act and Regulation X, and violations of the Georgia Residential Mortgage Act. (Doc. No. 1). On July 22, Plaintiff amended his complaint to add Defendant NewRez LLC. (Doc. No. 2). The amended complaint was not served on Defendants until July 27, 2020. (Doc. No. 5). Less than a month later, Defendants moved for an extension of time to respond to the amended complaint, which was granted on August 24, 2020. (Doc. No. 8, 9).

On September 30, 2020, Defendants moved to dismiss the amended complaint. (Doc. No. 10). In response, Plaintiff moved for an extension of time to respond to Defendants' motion to dismiss on three separate occasions. (Doc. No. 13, 15, 16). Finally, on December 1, 2020, Plaintiff filed a motion for leave to file a second amended complaint in response to the motion to dismiss. (Doc. No. 17). Defendants' oppose Plaintiff's motion for leave to amend as being futile. (Doc. No. 20).

## II.    LEGAL STANDARD

### A.  Motion to Amend the Complaint Pursuant to Rule 15(a)(2)

Motions to amend a complaint are governed by Federal Rule of Civil Procedure 15(a). That rule provides that once a party has amended its pleading once as a matter of course, as Plaintiff has done here, "a party may amend its pleadings only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Although "[t]he decision to grant or deny leave to amend under Rule 15(a) is 'committed to the sound discretion of the court,'" *Arab African Int'l Bank v. Epstein*, 10 F.3d 168, 174 (3d Cir. 1993), the federal rules mandate that the Court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

"An amendment must be permitted in the absence of undue delay, bad faith, dilatory motive, unfair prejudice, or futility of amendment." *Van Duyne v. Stockton University*, No. 1:19-cv-21091-NLH-KMW, 2020 WL 6144769, at *2 (D.N.J. Oct. 20, 2020) (quoting *Grayson v. Mayview State Hosp*., 293 F.3d 103, 108 (3d Cir. 2002)). The futility of a proposed amended pleading is evaluated under the same standard of legal sufficiency as a motion to dismiss under Rule 12(b)(6). *Travelers Indent. Co. v. Dammann & Co*., 594 F.3d 238, 243 (3d Cir. 2010). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

However, "[g]iven the liberal standard for the amendment of pleadings, 'courts place a heavy burden on opponents who wish to declare a proposed amendment futile.'" *Brainbuilders, LLC v. Optum, Inc*., No. 18-638, 2019 WL 2315389, at *5 (D.N.J. May 31, 2019) (quoting *High 5 Games, LLC v. Marks*, No. 13-7161, 2017 WL 349375, at *5 (D.N.J. Jan. 24, 2017)).

Therefore, "[i]f a proposed amendment is not clearly futile, then denial of leave to amend is improper." *High 5 Games, LLC*, 2017 WL 349375, at *5 (emphasis in original) (quoting *Harrison Beverage Co. v. Dribeck Importers, Inc*., 133 F.R.D. 463, 468 (D.N.J. 1990)); *see also* 6 Wright, Miller & Kane, Federal Practice and Procedure § 1487 (3d ed. 2012).

## III.   DISCUSSION

There are two pending motions before this Court: a motion to dismiss the complaint under Rule 12(b)(6), and in response, a motion to amend the Complaint under Rule 15(a)(2). Since this Court's determination regarding Plaintiff's motion to amend may well resolve the pending motion to dismiss as well, the Court will first address whether Plaintiff shall be granted leave to file his proposed amended complaint. *Marina District Development Co., v. AC Ocean Walk, LLC*., No. 120CV15719NLHKMW, 2021 WL 1526552, at *3 (D.N.J. Apr. 19, 2021) (addressing the motion for leave to amend first because its resolution would resolve the pending motion to dismiss as well).

Plaintiff's proposed second amended complaint is substantially similar to his first amended complaint and asserts claims for breach of contract, violation of the Fair Debt Collection Practices Act, Real Estate Settlement Procedures Act, Regulation Z, and Georgia's Residential Mortgage Act. Defendants contend the proposed amended complaint is futile and therefore Plaintiff's motion for leave to amend should be denied. We will address each argument in turn.

### A.  Breach of Contract Claim[3]

Plaintiff asserts a litany of breach of contract claims, almost all of which are based on the theory that the notice of servicing transfer letter and addendum were an offer to enter into a

---

[3] Defendants note that we should analyze Plaintiff's breach of contract claim under Georgia law because of the choice of law provision in the security deed. We agree and do so below.

contract. To the extent the Court understands him, Plaintiff's breach of contract theory is as follows: (1) in September of 2008, he rescinded his mortgage loan under the Truth in Lending Act's rescission procedure and therefore cancelled his debt; (2) when he was contacted by his "new" debt collector, PHH Mortgage Corp, in June 2019, and informed of his outstanding debt and payment terms, this constituted an offer to enter into a contract; and (3) he then "accepted" this "offer" by tendering payments to PHH. This theory and the other claims premised on it do not withstand scrutiny. However, Plaintiff does allege one breach of contract claim which is not premised on the notice of servicing transfer letter and addendum—Defendants breach of Section 22 of the security deed—and this claim is not clearly futile.

Plaintiff's attempt to plead a breach of contract claim based on the notice of servicing transfer letter and addendum is the functional equivalent of an attempt to fit a square peg in a round hole: no matter how hard he tries, it will not work. First, this claim fails for want of an offer. Under Georgia law, the essential elements of a breach of contract claim are (1) a valid contract; (2) material breach of its terms; and (3) damages arising therefrom. *See Budget Rent-A-Car of Atlanta, Inc. v. Webb*, 469 S.E.2d 712, 713 (Ga. Ct. App. 1996); *see also TDS Healthcare Sys. Corp. v. Humana Hosp. Illinois, Inc*., 880 F.Supp. 1572, 1583 (N.D. Ga. 1995) (Evans, J.). An offer is an essential prerequisite to the creation of a contract. *Georgia Lottery Corp. v. Patel*, 349 Ga. App. 529, 531 (2019), cert. denied (Nov. 4, 2019). "An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Rakusin v. Radiology Assocs. of Atlanta, P.C*., 305 Ga. App. 175, 180 (2010) (quoting Restatement (Second) of Contracts § 24 (1981)); *see Caley v. Gulfstream Aerospace Corp*., 428 F.3d 1359, 1373 (11th Cir.2005) (applying Georgia law).

This is not a close call. It is manifestly apparent that the notice of servicing transfer letter and addendum were sent to Plaintiff in order to comply with the law, not as an intended offer. Under RESPA and Regulation X, a mortgage lender or servicer must provide notice of any transfer of servicing of a mortgage loan. 12 C.F.R. § 1024.33(b)(1). The notice must include: the effective date of the transfer of servicing; the name, address, and telephone number of both the transferee servicer and the transferor servicer, the date(s) on which the transferor servicer will cease to accept payments and the transferee servicer will begin to accept such payments; and a statement that the transfer of servicing does not affect any term or condition of the mortgage loan other than terms directly related to the servicing of the loan. 12 C.F.R. § 1024.33(b)(4). Defendants' notice of servicing transfer letter provided precisely what was required per the regulation and nothing more. There was no promise embedded in the language of this letter. Instead, it clearly stated "[t]he transfer of servicing does not affect any term or condition of the mortgage other than terms directly related to the servicing of the account."

The addendum fares no better as it merely sets forth the terms of the original mortgage loan. For instance, both the Addendum and the original mortgage provide that the required monthly payment is $580.51. There is also no indication in either document that changes were made or were going to be made to the terms of Plaintiff's loan. Instead, they simply *informed* Plaintiff of his new service provider. To put this into context, if an advertisement—which promotes a product or service—is generally considered an invitation to bargain and does not even rise to the level of a legal offer, then documents sent only to comply with federal law and inform the reader of a change surely cannot be deemed a legal offer. Therefore, Plaintiff's breach of contract claims fails because the notice of servicing transfer letter and addendum do not constitute a legal offer. *Doe v. Emory Univ.*, No. 1:20-CV-2002-TWT, 2021 WL 358391, at *5

(N.D. Ga. Jan. 22, 2021) (finding promotional statements in Emory University's website and catalog which merely described the features and opportunities at the school could not be deemed a legal offer); *Dhillon v. Zions First Nat. Bank*, 462 F. App'x 880, 884 (11th Cir. 2012) (affirming the district court's ruling that there was no breach of contract claim because the parties did not enter into a contract, which is prerequisite to this claim).

Plaintiff's breach of contract claim also fails for another equally persuasive reason—common sense. If every notice of servicing transfer letter constituted an offer to enter into a contract, thereby providing the borrower with an opportunity to renegotiate the terms of the loan or simply reject the offer, the mortgage loan industry would be completely upended. Every borrower would reject this "offer" and walk away debt free. Such a claim, which is inimical to the financial security of the mortgage loan industry, will not garner an imprimatur from this Court. Therefore, Plaintiff's breach of contract claim fails for this reason as well.

However, Plaintiff does allege one breach of contract claim which is not premised on the notice of servicing transfer letter and addendum—Defendants breach of Section 22 of the security deed. He alleges that under Section 22 of the security deed, Defendants were required to give him notice of his rights to reinstate after acceleration and to bring a court action to assert the non-existence of a default or raise any other defense. He further alleges that the delinquency notice did not inform him of these rights and thereby caused him damages. Whatever the merits of this claim, Defendants have completely eschewed any analysis of it, and therefore we cannot say it is clearly futile.

### B.  Breach of Georgia Residential Mortgage Act[4]

---

[4] Plaintiff seems to allege Defendants violated O.C.G.A. § 51-1-6. We are construing this claim as alleging a violation of O.C.G.A. § 7-1-1013 because courts have only found a private right of action under O.C.G.A. § 7-1-1013 through O.C.G.A. § 51-1-6. *White-Lett v. New Penn Fin., LLC*, No. 1:17-CV-03385-CC-LTW, 2018 WL

Plaintiff also attempts to assert a claim under O.C.G.A. § 7-1-1013(6), which makes it a violation for any "person transacting a mortgage business" to: "[e]ngage in any transaction, practice, or course of business which is not in good faith or fair dealing, or which operates a fraud upon any person, in connection with the attempted or actual making of, purchase of, transfer of, or sale of any mortgage loan." O.C.G.A. § 7-1-1013 (2018). Defendants contend Plaintiff cannot state a claim for breach of the covenant of good faith and fair dealing under this statute because his claim is premised on a non-existent contract. We agree.

O.C.G.A. § 7-1-1013(6) prohibits transactions that are not in good faith or fair dealing. "A breach of the covenant of good faith and fair dealing is not an independent cause of action which [can] be asserted separately from the claim for breach of contract." *Stuart Enterprises Intern., Inc. v. Peykan, Inc*., 252 Ga. App. 231, 233 (2001). To prevail on a claim for breach of the covenant of good faith and fair dealing, Plaintiff must establish that Defendants owed her a contractual obligation. *See, e.g., Onbrand Media v. Codex Consulting, Inc*., 301 Ga. App. 141, 147 (2009).

Here, to the extent the Court understands Plaintiff's allegations, his claim for breach of the covenant of good faith and fair dealing seems to be premised on the "contract" created by the notice of servicing transfer letter and addendum. Because we held that these documents do not amount to a contract, Plaintiff's claim is futile as it has not cured the deficiency in the original complaint. *Koechlein v. Citi Mortg., Inc*., No. 1:12-CV-00492-JOF, 2012 WL 13014126, at *5 (N.D. Ga. Aug. 21, 2012) (finding a claim for breach of the covenant of good faith and fair dealing failed because there was no contract); *Kimball v. Wetzel*, No. 3:18-CV-1411, 2019 WL

---

6839277, at *10 (N.D. Ga. Sept. 4, 2018), report and recommendation adopted, No. 1:17-CV-3385-CC-LTW, 2019 WL 7493539 (N.D. Ga. Apr. 1, 2019).

1232903, at *6 (M.D. Pa. Mar. 18, 2019) (noting an amendment is futile if it will not cure the deficiency in the original complaint).

### C.  Fair Debt Collection Practices Act

Interspersed throughout different sections of Plaintiff's Complaint are Defendants' alleged violations of the FDCPA, the bulk of which focus on the delinquency notice, the notice of servicing transfer letter, and the addendum. Because the claims that are premised on the notice of servicing transfer letter and addendum fail due to the statute of limitations, we focus only on those allegations that are not time barred.

Plaintiff claims that Defendants violated Section 1692(e)(5) by rejecting his mortgage payments and failing to credit them to his account. He also argues in a conclusory fashion that Defendants "knew or should have know that [they were] encroaching upon FDCPA's prohibition under 15 U.S.C. 1692(e)(10)." Plaintiff further alleges that Defendants' delinquency notice violated Section 1692(e)(2)(A) when it listed his balances for the months of June, July, and August as "unpaid" because he did remit payments for those months, they were just denied. Lastly, Plaintiff claims Defendants violated Section1692(e) by failing to provide him with an accurate accounting in subsequent billings letters. Defendants contend that any alleged violation of the FDCPA is barred by the statute of limitations. Likewise, even if Plaintiff's claims are not barred by the statute of limitations, Defendants argue they are futile because the security deed authorized them to reject payments that did not bring the loan current.

#### i.  Statute of Limitations

Defendants are correct that several of Plaintiff's claims are barred by the statute of limitations. A statute of limitations defense may be raised in a Rule 12(b)(6) motion where a plaintiff's claims are untimely on the "face of the complaint." *Stephens v. Clash*, 796 F.3d 281,

288 (3d Cir. 2015). "In deciding the statute of limitations defense in a motion to dismiss, courts may consider only the allegations contained in the complaint, exhibits attached to the complaint, matters of public record, and documents integral to or explicitly relied on in the complaint." *Radcliff v. Radcliff*, No. CV 20-3669, 2020 WL 7090687, at *3 (D.N.J. Dec. 4, 2020). There is a one-year statute of limitations for violations of the Fair Debt Collections Practice Act and it begins to run on the date on which the alleged violation occurred, not on the date on which it was discovered. *Williams-Hopkins v. Allied Interstate, LLC*, No. 20-226 (SDW) (LDW), 2020 WL 2731101, at *2 (D.N.J. May 26, 2020); *Rotkiske v. Klemm*, 140 S. Ct. 355, 358 (2019).

From the face of the complaint and the exhibits attached, it is apparent that any FDCPA claims based on the notice of servicing transfer letter and addendum are untimely. The notice of servicing transfer letter and addendum were allegedly received "[o]n or about June 4, 2019." Therefore, because a violation of the FDCPA, if any, would have occurred on June 4, 2019, Plaintiff had until June 4, 2020 to assert a claim against Defendants. Plaintiff's complaint was not filed until June 26, 2020—more than a year after June 4, 2019—and consequently, his FDCPA claims cannot be based on these documents. Exhibits E, F, G, H, I, and J were all received after June 26, 2019, and therefore fall within the statute of limitation deadline.

We do not understand Defendant's contention that Plaintiff cannot base his FDCPA claim on Exhibit J, the foreclosure letter, because it will be timed barred. Defendant suggests that because Plaintiff had not alleged when he received the Foreclosure letter, which is dated May 22, 2020, he cannot show he is within the one-year statute of limitation. This argument does not make sense. Plaintiff filed his complaint on June 26, 2020 and included the foreclosure letter as an exhibit. The earliest he could have received the foreclosure letter is May 22, 2020—the date it was purportedly drafted. Given that the foreclosure letter was included in the original complaint,

the latest he could have received it was June 26, 2020—the date of filing. Thus, the date the violation occurred ranges from May 22, 2020 to June 26, 2020. Quite clearly, any date within this range, which is a little over a month, would be within the one-year statute of limitation. Defendants cannot ask this Court to consider documents outside the pleading on a motion to dismiss and then ignore those same documents when it suits them. Such a Janus-faced attempt to play fast and loose with the rules will not be countenanced.[5]

Accordingly, to the extent Plaintiff seeks to hold Defendants liable under the FDCPA for its notice of servicing transfer letter and addendum, Plaintiff's claims are clearly futile because they are barred by the statute of limitations.

### ii. Futility

We will now address whether Plaintiff has stated a claim for violation of the FDCPA based on those allegations that are not timed barred.[6] "To prevail on an FDCPA claim, a plaintiff must prove that (1) [he] is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Jensen v. Pressler & Pressler*, 791 F.3d 413, 417 (3d Cir. 2015). Only the fourth prong is disputed here.

Section 1692e generally provides that debt collectors "may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." *Reichenbach v. Hayes, Johnson & Conley, PLLC*, No. 3:19-CV-00932-ARC, 2019 WL 4511698, at *5 (M.D. Pa. Sept. 19, 2019). This includes "[t]he threat to take any action that cannot legally

---

[5] Defendants also ask this Court to essentially shift the burden to the Plaintiff by pointing out his failure to allege when he received the foreclosure letter. They must remember, the statute of limitations is an *affirmative defense*, meaning they bear the burden of demonstrating that the claim was not brought in time, not Plaintiff.

[6] Although Defendant is correct that Plaintiff's claims for violation of the FDCPA could be construed as being rooted in his breach of contract, because Plaintiff proceeds *pro se* we must construe his complaint liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Therefore, we will construe his FDCPA claims as independent from his breach of contract claims.

be taken or that is not intended to be taken" under § 1692e(5), falsely representing "the character, amount, or legal status of any debt" under § 1692e(2)(A), and "[t]he use of any false representation or deceptive mean to collect or attempt to collect any debt or to obtain information concerning a consumer" under § 1692e(10). Each of these provisions deals with debt collectors' representations to debtors. We analyze such communications "from the perspective of the least sophisticated debtor." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir.2008); *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 454 (3d Cir.2006). This low standard "effectuate[s] the basic purpose of the FDCPA: to protect all consumers, the gullible as well as the shrewd." *Rosenau*, 539 F.3d at 221 (internal quotation marks and alterations omitted).

Nevertheless, the least sophisticated debtor is held to "a quotient of reasonableness, a basic level of understanding, and a willingness to read with care." *Knight v. Midland Credit Mgmt. Inc.*, 755 F. App'x 170, 174 (3d Cir. 2018). Accordingly, a debt collector cannot be held liable for a plaintiff's "bizarre or idiosyncratic interpretations." *Id.* A "specific plaintiff need not prove that she was actually confused or misled." *Jensen*, 791 F.3d at 419 (emphasis in original). Instead, the focus is on whether the objective least sophisticated debtor would be deceived or misled by a debt collector's statement in a communication. *Id.* at 419–20. "[A] collection letter is deceptive when it can be reasonably read to have two or more different meanings, one of which is inaccurate." *Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 149 (3d Cir. 2013). Furthermore, for a debt collector's statement to be actionable, it must be material. *Jensen*, 791 F.3d at 421. A statement is material if it has "the potential to affect the decision-making process of the least sophisticated debtor." *Id*. This, though, "is not a particularly high bar." *Id.*

Plaintiff's theory under Section 1692(e)(5) is that Defendants were not legally entitled to reject his payments and therefore violated this provision by sending him letters informing him

that his payments were rejected. This claim fails for two independent reasons. First, Section 1692e(5) prohibits a debt collector from *threatening* to take any action that cannot legally be taken or was not intended to be taken. 15 U.S.C. § 1692e(5). Defendants did not threaten to take any action, instead they acted by rejecting Plaintiff's payments. *Skinner v. Asset Acceptance, LLC*, 876 F. Supp. 2d 473, 479 (D.N.J. 2012) (concluding there was no violation of the FDCPA, in part, because the letter did not constitute a threat). Second, they were legally entitled to reject and return his payments when such payments failed to bring his loan current because the Security Deed provided this discretion: the "[l]ender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current."[7] *Simon v. FIA Card Servs. NA*, 639 F. App'x 885, 890 (3d Cir. 2016) (noting the subpoenas did not violate Section 1692(e)(5) because they described an action that legally could be taken). Therefore, Plaintiff's claim under Section 1692(e)(5) is futile.

To the extent this Court understands Plaintiff's complaint, his claim under 15 U.S.C. § 1692e(10) seems to be premised on the same grounds as his § 1692e(5) claim: rejection of his mortgage loan payments. Therefore, for the same reasons that his claim under § 1692e(5) failed, his claim under § 1692e(10) also fails. *Grubb v. Green Tree Servicing, LLC*, No. CIV.A. 13-07421 FLW, 2014 WL 3696126, at *11 (D.N.J. July 24, 2014) (noting the scope of § 1692e(10) encompasses virtually every FDCPA violation and therefore when the allegations under § 1692e(10) are based on the same allegations as another provision, the analysis is the same).

---

[7] This conclusion forecloses Plaintiff's argument that Defendants violated 15 U.S.C. § 1692(e) by failing to provide him with an accurate accounting in subsequent billings letters. This claim seems to be premised on the fact that the billing letters were allegedly inaccurate because they did not include Plaintiff's attempted payments. However, as noted above, Defendants were entitled to reject and return such payments because they did not bring his account current.

Construing Plaintiff's complaint liberally, we cannot say his claim that the delinquency notice was deceptive or misleading under Section 1692e is clearly futile. The delinquency starts "[y]ou are late on your mortgage payments. Failure to bring your loan current may result in fees and foreclosure—the loss of your home." It then indicates that for the months of May through October there were unpaid balances of $785.34 or $835.65. It further notes that there is a current payment due on November 1 of $785.34. Just below that is the following statement "Total: $108,243.69 due. You must pay this amount to bring your loan current." The least sophisticated debtor might have doubt about how to satisfy his debt obligations from the statement that there is a current payment due on November 1st because it could be reasonably read as indicating that he could continue to make monthly payments. This would be inaccurate because Defendants have rejected and returned all previously tendered monthly payments. *Reed v. Pinnacle Credit Servs*., LLC, No. CIV A 09-544, 2009 WL 2461852, at *4 (E.D. Pa. Aug. 11, 2009) (noting that where there are two possible meanings to a communication, one of which is inaccurate, the least-sophisticated consumer could be misled or deceived by that inconsistency). Therefore, of all Plaintiff's allegations, only the one based on the delinquency notice is not futile.

Whether the previous letters informing Plaintiff that his payments were rejected for failure to bring his loan current have any impact on this claim is more appropriately addressed in a later, properly briefed motion. *See Lukawski v. Client Servs., Inc*., No. 3:12-CV-02082, 2013 WL 4647482, at *3 (M.D. Pa. Aug. 29, 2013) (determining whether a communication was deceptive by considering each letter in isolation and rejecting the argument that the least sophisticated debtor should be expected to recall a disclosure contained in another letter received six weeks earlier).[8] *But cf. Hopkins v. Collecto, Inc*., 994 F.3d 117, 122 (3d Cir. 2021)

---

[8] Indeed, it seems to be an open question whether the least sophisticated debtor is a purely objective standard or retains a modicum of subjectivity by considering what the objective debtor in the plaintiff's position would have

(explaining that even the least sophisticated debtor "understands that collection letters—as reflected by their fonts, formatting, content, and fields—often derive from templates and may contain information not relevant to his or her particular situation.").

### iii.   Real Estate Settlement Procedures Act and Regulation X

Using a shotgun approach, Plaintiff charges Defendants with various violations of the statutory provisions and regulations related to RESPA. While many of the claims are duplicative, the substance of his allegations is that Defendants violated: (1) 12 C.F.R. § 1024.35 by failing to credit his four monthly payments to his mortgage loan accounts; (2) 12 C.F.R. § 1024.41 by proceeding with the foreclosure without first offering a home retention offer within 37 days of a contemplated foreclosure sale; and (3) 12 U.S.C. § 2605 by failing to timely respond to his qualified written request and charging him "LPI fees without ascertaining . . . if he had maintained his own hazard insurance." Defendants raise a series of challenges to Plaintiff's claims, but the one which carries the most weight is their contention that Plaintiff has failed to sufficiently allege actual or statutory damages.

12 U.S.C. § 2605(f) provides a private right of action for violations of REPSA, including violations of its regulations. *In re Coppola*, 596 B.R. 140, 152 (Bankr. D.N.J. 2018). Section 2605(f) states in pertinent part:

> Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts:
>
> (1) Individuals
>
> In the case of any action by an individual, an amount equal to the sum of—
>
>     (A) any actual damages to the borrower as a result of the failure; and

---

thought or done. *Jensen v. Pressler & Pressler*, 791 F.3d 413, 422 n.4 (3d Cir. 2015) (declining to address whether the least sophisticate debtor was a purely objective standard or whether it should look to what an objective debtor in the plaintiff's situation, who like plaintiff knew that the clerk's name was improper, would have thought or done).

(B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000.

Thus, courts have recognized that "damages are an essential element in pleading a RESPA claim." *Lloyd v. New Jersey Hous. & Mortg. Fin. Agency*, No. 18-3829, 2021 WL 387473, at *3 (3d Cir. Feb. 3, 2021).

There are two types of damages recoverable when a loan servicer fails to comply with its RESPA duties. *Stefanowicz v. SunTrust Mortg.*, 765 F.App'x 766, 772 (3d Cir. 2019). First, the borrower may recover actual damages if he or she proves that (1) the loan servicer violated a particular RESPA requirement and (2) actual damages were sustained "as a result of the failure." 12 U.S.C. § 2605(f)(1)(A); *see also Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1246 (11th Cir. 2016) (citing *Turner v. Beneficial Corp.*, 242 F.3d 1023, 1028 (11th Cir.2001)) (en banc) (noting that "there must be a 'causal link' between the alleged [RESPA] violation and the damages"). Second, a borrower may seek statutory damages up to $2,000 if the damages are based on "a pattern or practice of noncompliance . . . " 12 U.S.C. § 2605(f)(1)(B).

The only allegations of actual damages in Plaintiff's complaint are his averments that he "seeks to recover . . . the cost that he . . . incurred [by hiring] an attorney and HUD counselor . . . [because he] spent over $5,000 in an effort to get PHH to review a loss retention plan," and his allegation that Defendants have caused him physical and mental anguish. Both fail to establish actual damages.

First, with respect to litigation expenses, many courts have found such costs insufficient to satisfy the actual damages pre-requisite to suit. *See. e.g., Whittier v. Ocwen Loan Servicing, L.L.C.*, 594 Fed. Appx. 833, (5th Cir.2014) (agreeing that "attorney's fees and expenses of litigation . . . incurred cannot, as a matter of law, satisfy the actual damages requirement of a

18

RESPA claim" because "RESPA allows for fees and expenses in addition to actual damages")
(emphasis in original) (citing 12 U.S.C. § 2605(f)); *see also Kassner v. Chase Home Fin., LLC*,
2012 WL 260392, at *7, 2012 U.S. Dist. LEXIS 10358, at *21 (D.Mass. Jan. 27, 2012)
("[A]ttorney's fees for bringing a RESPA suit are not actual damages under the statute.")
(collecting cases); *Allen v. United Fin. Mortg. Corp*., 660 F.Supp.2d 1089, 1097 (N.D.Cal.2009)
("[A]ttorneys' fees are not 'actual damages' as contemplated by § 2605(f)(1) and instead are
separately enumerated as recoverable losses in § 2605(f)(3)."). The Court finds the reasoning in
these cases persuasive as a contrary finding would render the portion of the statute directly
addressing "costs of the action" superfluous. *See United States v. Cooper*, 396 F.3d 308, 312 (3d
Cir.2005) ("It is a well-known canon of statutory construction that courts should construe
statutory language to avoid interpretations that would render any phrase superfluous."").
Therefore, the Court finds that leave to amend to add this allegation would be futile.

Second, Plaintiff's claim that he suffered actual damages in the form of "physical and
mental anguish," while not unrecoverable as a matter of law, fails to tie his emotional distress to
any of Defendants' violations of RESPA. This is insufficient to demonstrate the causal
connection requirement. *Davis v. Deutsche Bank Nat'l Tr. Co*., No. CV 16-5382, 2017 WL
6336473, at *8 (E.D. Pa. Dec. 12, 2017) (concluding the plaintiff's claim for violation of RESPA
failed because even though he may have alleged actual damages by contending he suffered
"anxiety, worry, and distress," he did not link these allegations to defendant's failure to respond
to his letters). However, because this pleading deficiency seems to be one of form rather than
substance, we will give Plaintiff leave to amend to cure it.[9]

---

[9] We need not address Plaintiff's allegation of statutory damages for two reasons. First, statutory damages are only
permitted in addition to actual damages. *See* 12 U.S.C. § 2605(f)(1) ("any additional damages ..." (emphasis
added)); *Wirtz v. Specialized Loan Servicing, LLC*, 886 F.3d 713, 719–20 (8th Cir. 2018) ("A borrower cannot
recover 'additional' damages under § 2605(f)(1)(B) without first recovering actual damages."); *Renfroe v.*

### 1.  12 C.F.R. § 1024.35

We construe Plaintiff's claim under 12 C.F.R. § 1024.35(b) as an allegation that

Defendants failed to timely respond to his notice of error. Defendants contend that they did not

violate 12 C.F.R. § 1024.35(b) because Plaintiff never alleged he sent a notice of error to them.

Defendants' argument is not well taken.

12 C.F.R. § 1024.35(a) provides:

> A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred. . . . A qualified written request that asserts an error relating to the servicing of a mortgage loan is a notice of error for purposes of this section, and a servicer must comply with all requirements applicable to a notice of error with respect to such qualified written request.

The definition section of the regulations defines a qualified written request as: "a written

correspondence from the borrower to the servicer that includes, or otherwise enables the servicer

to identify, the name and account of the borrower, and either: (1) states the reasons the borrower

believes the account is in error; or (2) provides sufficient detail to the servicer regarding

information relating to the servicing of the mortgage loan sought by the borrower." 12 C.F.R. §

1024.31.

Plaintiff alleges that he sent a qualified written request to Defendants on May 27, 2020.

(Doc. No. 17, Second Am. Compl. at 24; Doc. No. 21-1, Exhibit K). The qualified written

request included Plaintiff's name, his loan account number, and asserted a number of errors that

Defendants allegedly committed, including the failure to credit his payments to his mortgage

---

*Nationstar Mortg., LLC*, 822 F.3d 1241, 1247 n.4 (11th Cir. 2016) ("[T]he use of 'additional' seems to indicate that a plaintiff cannot recover pattern-or-practice damages in the absence of actual damages." (dicta)). *But see Palmer v. MGC Mortg., Inc.*, 13-cv-1734, 2013 WL 6524648, at *6 (E.D. Pa. Dec. 10, 2013) (finding either statutory or actual damages sufficient, without citation or analysis). Therefore, because Plaintiff has failed to adequately allege actual damages for all of his claims except for one, statutory damages are irrelevant. Second, even though Plaintiff has alleged actual damages for his claim that Defendants violated § 2605(k)(1)(A), his allegations of statutory damages are purely conclusory statements bereft of any factual support.

loan account. This written correspondence is more than sufficient to qualify as a qualified written

request that invokes Defendants' duty under the regulations. Therefore, Plaintiff's claim that

Defendants failed to respond to his notice of error is not clearly futile provided, however, that he

remedy the causation deficiency with respect to his claim for emotional distress damages.

### 2.   12 C.F.R. § 1024.41(g)

Plaintiff seems to allege that Defendants violated RESPA by failing to offer him a home

retention plan. For instance, he alleges Defendants "administered foreclosure proceeding notices

unfairly, prematurely, and without first offering a home retention offer within 37 days of a

contemplated foreclosure sale." Defendants argue Plaintiff's claim fails as a matter of law

because subsection (a) of 12 C.F.R. § 1024.41 provides "[n]othing in 1024.41 imposes a duty on

a servicer to provide any borrower with any specific loss mitigation option." Therefore,

according to Defendants, they do not have to offer Plaintiff any loan mitigation option. They

likewise argue that Plaintiff never alleged he submitted a loss mitigation application. Because

this latter argument was raised in Defendants motion to dismiss and Plaintiff still failed to cure it

in his proposed amended complaint, we find this claim futile.

12 C.F.R. § 1024.41(g) provides:

If a borrower submits a complete loss mitigation application after a servicer has made the
first notice or filing required by applicable law for any judicial or non-judicial foreclosure
process but more than 37 days before a foreclosure sale, a servicer shall not move for
foreclosure judgment or order of sale, or conduct a foreclosure sale, unless:

> (1) The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of
> this section that the borrower is not eligible for any loss mitigation option and the
> appeal process in paragraph (h) of this section is not applicable, the borrower has
> not requested an appeal within the applicable time period for requesting an
> appeal, or the borrower's appeal has been denied;
> (2) The borrower rejects all loss mitigation options offered by the servicer; or
> (3) The borrower fails to perform under an agreement on a loss mitigation option.

The protections of § 1024.41 do not apply unless a servicer receives a loss mitigation application, complete or not, at least 37 days prior to a scheduled foreclosure sale. *Joussett v. Bank of Am., N.A.*, No. CV 15-6318, 2016 WL 5848845, at *6 (E.D. Pa. Oct. 6, 2016). Thus, to trigger any of these requirements, a plaintiff must allege that he submitted a timely application. *Id.* As far as this Court can tell, Plaintiff does not allege that he submitted a loss mitigation application, let alone a timely one. The closest Plaintiff comes to such an allegation is his averment that he "spent over $5,000 in an effort to get PHH to review a loss retention plan." Even if we were to construe this allegation as indicating that: (1) the "loss retention plan" is a loss mitigation application; and (2) he submitted such a plan to Defendants, there is still no allegation that the submission was timely. Therefore, even construing the amended complaint in the light most favorable to Plaintiff, he still has not adequately alleged that Defendants violated § 1024.41.

Defendants raised this point in the motion to dismiss and again in their opposition to Plaintiff's motion for leave to amend. If Plaintiff could not remediate this formalistic pleading deficiency in his proposed amended complaint, there is a reason for this failure. It is because he never did submit a timely loss mitigation application. Indeed, this is not information for which discovery is necessary to unearth; it would be readily available to Plaintiff. Therefore, this claim is clearly futile. *Kimball v. Wetzel*, No. 3:18-CV-1411, 2019 WL 1232903, at *6 (M.D. Pa. Mar. 18, 2019) (noting an amendment is futile if it will not cure the deficiency in the original complaint).

### 3.   12 U.S.C. § 2605(k)(1)(A)

Plaintiff alleges Defendants violated Section 2605(k)(1)(A) by charging him forced-placed hazard insurance fees even though he had his own insurance coverage and that the

increase in his monthly payments reflects the charge of these fees. Defendants contend that

Plaintiff fails to allege that they placed hazard insurance on his mortgage and even if his

complaint could be construed as alleging such, they had a reasonable basis to believe he failed to

comply with the loan contracts requirement to maintain property insurance. Neither of

Defendants arguments are correct.

12 U.S.C. § 2605(k)(1)(A) provides "[a] servicer of a federally related mortgage shall not

. . . obtain force-placed hazard insurance unless there is a reasonable basis to believe the

borrower has failed to comply with the loan contract's requirements to maintain property

insurance." Force-placed insurance is "hazard insurance coverage obtained by a servicer of a

federally related mortgage when the borrower has failed to maintain or renew hazard insurance

on such property as required of the borrower under the terms of the mortgage." 12 U.S.C. §

2605(k)(2). Subsection (l) details the requirements for a servicer to have a reasonable basis for

obtaining force-placed insurance. It provides that a servicer does not have a reasonable basis to

obtain force-placed hazard insurance unless:

> (A) the servicer has sent, by first-class mail, a written notice to the borrower containing--
>> (i) a reminder of the borrower's obligation to maintain hazard insurance on the property securing the federally related mortgage;
>> (ii) a statement that the servicer does not have evidence of insurance coverage of such property;
>> (iii) a clear and conspicuous statement of the procedures by which the borrower may demonstrate that the borrower already has insurance coverage; and
>> (iv) a statement that the servicer may obtain such coverage at the borrower's expense if the borrower does not provide such demonstration of the borrower's existing coverage in a timely manner;
> (B) the servicer has sent, by first-class mail, a second written notice, at least 30 days after the mailing of the notice under subparagraph (A) that contains all the information described in each clause of such subparagraph; and
> (C) the servicer has not received from the borrower any demonstration of hazard insurance coverage for the property securing the mortgage by the end of the 15-day period beginning on the date the notice under subparagraph (B) was sent by the servicer.

Defendants first argument—that Plaintiff has not alleged Defendants obtained force-placed hazard insurance—is not totally off base, but given that we must construe Plaintiff's claim liberally, we find that he has made this allegation. First, Plaintiff alleges "PHH . . . increase[d] his payments to the monthly amount of about $785.34 . . .[and] PHH['s] extra payment amount could have been directly related to Lender Placed Insurance (Hazard) imposed fees." This allegation is not sufficient by itself to plausibly allege Defendants charged Plaintiff with force-placed hazard insurance fees, but it is when construed in conjunction with a letter sent by Defendants. The letter stated in pertinent part "if we do not receive proof of insurance on the property for any given period of time, we . . . assess Lender Placed Insurance (LPI) or Force Placed Insurance (FPI) on the property. This will result in a negative escrow balance and an escrow payment will be added to the monthly payment amount in order to collect the escrow advance." Thus, these two allegations allow us to draw the reasonable inference that the increase in Plaintiff's monthly payments and his negative escrow balance were due to Defendants' charging Plaintiff fees for forced-placed hazard insurance.[10]

Defendants second argument, that they had a reasonable basis for obtaining force-placed hazard insurance, may be true but we cannot make this determination at this stage of the case. Per Section 2605(l)(1), there are a series of requirements Defendants must satisfy in order to have a "reasonable basis" for obtaining the insurance. This is a fact question better suited for resolution at a later stage in the case, and Defendants have not attached any exhibits to their motion to dismiss showing that they complied with these requirements. Therefore, Plaintiff's claim that Defendants' violated Section 2605(k)(1)(A) is not futile.

---

[10] This conclusion stands even though one of Defendants' letters states that Plaintiff's account "was assessed with Lender Placed Insurance by Ocwen" because the increase in monthly payments occurred after Defendants took over the servicing of Plaintiff's mortgage.

**D.  Leave to File Amended Complaint**

Defendants argue that Plaintiff should not be permitted to amend his complaint because it is unduly prejudicial to them and causes undue delay by placing an unwarranted burden on the Court. As should be clear from our conclusions above, we disagree. Given that we have found some of Plaintiff's claims to be futile and that he has not previously been granted leave to amend, granting leave to amend here does not cause more than a tinge of prejudice to Defendants—quite clearly not the undue prejudice necessary to prevent leave. Therefore, Plaintiff will be granted leave to amend his complaint consistent with this Opinion.

## IV.   CONCLUSION

For the reasons expressed above, Plaintiff's motion for leave to file his amended complaint will be granted in part, and Defendant's motion to dismiss will be denied as moot. An appropriate order follows.

Dated: 5/24/2021

/s/ Robert B. Kugler
ROBERT B. KUGLER
United States District Judge