# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

|  |  |
|---|---|
| HUSSAIN KAREEM, | : |
| Plaintiff, | : |
|  | : Civil No. 20-7846 (RBK/MJS) |
| v. | : |
|  | : **OPINION** |
| PHH MORTGAGE CORPORATION, *et al.*, | : |
| Defendants. | : |

**KUGLER**, United States District Judge:

Presently before the Court is Defendants' Motion to Dismiss the Third Amended Complaint (ECF No. 35) pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, Defendants' Motion to Dismiss is **GRANTED in part** and **DENIED in part**.

**I.    BACKGROUND**

As with his prior complaints, Plaintiff's Third Amended Complaint[1] is often difficult to follow. The Court does its best to interpret Plaintiff's allegations.

**A. Factual Background**

In July of 2006, Plaintiff Hussain Kareem, a resident of Georgia, executed an adjustable rate note with American Brokers Conduit for $159,200 in order to refinance his home. (ECF No. 29, "Third Am. Compl." 2);[2] (ECF No. 31-1, Ex. 1). To secure this loan, Mr. Kareem executed a Security Deed for his property in favor of Mortgage Electronic Registration Systems, Inc. (ECF No. 10-2, Ex. B); *see* (Third Am. Compl. 2). Around September 2008, Mr. Kareem attempted to

---

[1] We note that Plaintiff's self-titled Third Amended Complaint (ECF No. 29) is actually his second amended complaint in this case. For simplicity, we refer to the instant complaint, (ECF No. 29), as the Third Amended Complaint.

[2] We refer to page numbers when citing to the Third Amended Complaint.

1

rescind his loan under an alleged Truth in Lending Act rescission procedure and halted all payments on his mortgage until he was informed of the outcome. (Third Am. Compl. 2). He presumed his mortgage debt was cancelled by the rescission notice. (*Id.*)

Ocwen Loan Servicing, LLC ("Ocwen") serviced Mr. Kareem's loan until its merger with PHH Mortgage Corporation ("PHH"). (*Id.* at 3). PHH began servicing Plaintiff's loan on June 1, 2019. (*Id.*) On June 4, 2019, Mr. Kareem received a letter from PHH informing him of his new mortgage servicer. (*Id.*) (citing ECF No. 17-3, Ex. A). Attached to this letter was an addendum, which restated the status and terms of the loan. (*Id.*) (citing ECF No. 17-3, Ex. B).

Thereafter, Mr. Kareem submitted payments in the amount of $581.00 for the months of July, August, and September of 2019. (*Id.* at 4) (citing ECF No. 17-3, Exs. C, D, E, F; ECF No. 21, Exs. G, L). PHH returned all payments to Mr. Kareem in August and September of 2019, except for his July payment, informing him that these payments were "returned as [they were] insufficient to bring [his] account current." (*Id.*) (citing ECF No. 21, Exs. F, G, H).

Around October 16, 2019, Mr. Kareem received a delinquency notice from Defendants. (*Id.*) (citing ECF No. 21, Ex. I); (ECF 31, Ex. I). It indicated that he was delinquent on his mortgage loan by over 3000 days and needed to tender $108,243.69 to bring his account current. (*Id.*) On November 6, 2019, Plaintiff received another letter from Defendants informing him again that certain of his payments had been returned because they were insufficient to cure the default on the account. (*Id.*) (citing ECF No. 21, Ex. H); (ECF No. 31, Ex. H). The letter also stated that "[t]he payment of $581.00 received on 07/09/2019 was applied to the suspense account." (ECF No. 31, Ex. H). The letter further provided that Plaintiff's account "was assessed with Lender Placed Insurance by Ocwen" and noted that "if we do not receive proof of insurance on the property . . . we . . . assess Lender Placed Insurance (LPI) or Force Placed Insurance

2

(FPI) on the property. This will result in a negative escrow balance and an escrow payment will be added to the monthly payment amount in order to collect the escrow advance." (*Id.*)

In February 2020, Mr. Kareem was sent a letter informing him that PHH had retained a law firm in connection with his loan. (Third Am. Compl. 4) (citing ECF No. 1-1, Ex. J). This law firm sent a letter to Mr. Kareem on May 22, 2020, indicating that his mortgage loan debt was immediately due and payable in full. (*Id.*) It also indicated that a foreclosure sale for his property was scheduled to take place on July 7, 2020. (*Id.*) On May 27, 2020, Plaintiff sent a letter to Defendants, entitled "Qualified Written Request," claiming they erred by imposing forced-place insurance on his property. (*Id.*) (citing ECF No. 1-1, Ex. K); (ECF No. 31, Ex. K).

### B.  Procedural History

On June 26, 2020, Plaintiff filed a complaint in this Court asserting claims against Defendant PHH Mortgage Corp. (ECF No. 1). On July 22, Plaintiff amended his complaint to add Defendant NewRez LLC. (ECF No. 3).

On September 30, 2020, Defendants moved to dismiss the amended complaint. (ECF No. 10). On December 1, 2020, Plaintiff filed a motion for leave to file a Second Amended Complaint in response to the motion to dismiss, (ECF No. 17), which Defendants opposed, (ECF No. 20). On May 24, 2021, this Court granted Plaintiff's motion to amend in part and denied Defendants' motion to dismiss as moot. (ECF Nos. 25, 26).

On June 22, 2021, Plaintiff filed a Third Amended Complaint ("TAC"). (ECF No. 29). Defendants filed a motion to dismiss the TAC on August 4, 2021. (ECF No. 35, "Def. Mot."). Plaintiff filed a brief in opposition to Defendants' motion, (ECF No. 37, "Pl. Opp'n Br."), to which Defendants replied on September 27, 2021, (ECF No. 40).

## II.   LEGAL STANDARD

### A. Motion to Dismiss Under Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). A complaint survives a motion to dismiss if it contains enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To make this determination, courts conduct a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the Court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the Court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 680). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Iqbal*, 556 U.S. at 678). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citation omitted). A court may also consider documents explicitly relied on or integral to the complaint. *Id.* (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). "[T]he justification for the integral

4

documents exception is that it is not unfair to hold a plaintiff accountable for the contents of documents it must have used in framing its complaint, nor should a plaintiff be able to evade accountability for such documents simply by not attaching them to his complaint." *Id.* at 250.

### B. Pro se Litigants

Where litigants are proceeding *pro se*, the court "must liberally construe [the plaintiff's] pleadings, and … 'apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name.'" *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (quoting *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 247–48 (3d Cir. 1999)). The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions." *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citation omitted).

### III. DISCUSSION

In our May 24 Order and Opinion, this Court dismissed the following of Plaintiff's claims with prejudice: (1) the claims for breach of contract based on the notice of servicing transfer letter and addendum; (2) the claims for breach of Georgia's Residential Mortgage Act; (3) any Fair Debt Collection Practice Act ("FDCPA") claim based on the notice of servicing transfer and addendum; (4) the claims for violation of Sections 1692e(5) and 1692e(10) of the FDCPA; and (5) the claim for violation of 12 C.F.R. § 1024.41. (ECF Nos. 25, 26). To the extent that Plaintiff attempts to reinstate these claims in his Third Amended Complaint, we again dismiss those claims with prejudice for the reasons stated in our May 24 Opinion. Plaintiff should carefully adhere to the Court's orders going forward.

We turn now to Plaintiff's four remaining claims: (1) a breach of contract claim based on Section 22 of the Security Deed; (2) a claim for violation of Section 1692e of the FDCPA, 15 U.S.C. § 1692e, based on the delinquency notice; (3) a claim for violation of 12 C.F.R. §

1024.35; and (4) a claim for violation of 12 U.S.C. § 2605(k)(1)(A). Defendants move to dismiss all four claims. We address each argument in turn.

### A. Breach of Contract Claim

Plaintiff alleges that pursuant to the terms of Section 22 of the Security Deed, Defendants were required to give him notice of his rights to reinstate after acceleration and to bring a court action to assert the non-existence of a default or raise any other defense. (Third Am. Compl. 20-21, 25). He further alleges that the delinquency notice did not inform him of these rights and thereby caused him damages. (*Id.*) Defendants contend that they "did not breach the terms of section 22 of the Security Deed" because "Ocwen, PHH's predecessor and former loan servicer, sent Plaintiff a notice of default letter ("Notice of Default")" in 2014 that satisfied all of Section 22's requirements. (Def. Mot. 10-11). Defendants have attached a copy of the 2014 Notice of Default to their motion as an exhibit. (*Id.* at Ex. A).

Because we are at the motion to dismiss stage, the Court may only consider the 2014 Notice of Default letter if we convert Defendants' 12(b)(6) motion into one for summary judgment, Fed. R. Civ. P. 12(d), or if the exhibits are "integral to or explicitly relied upon in the complaint[.]" *Doe v. Univ. of the Scis.*, 961 F.3d 203, 208 (3d Cir. 2020) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426). We have discretion to accept materials beyond the pleadings. *Glob. Naps, Inc. v. Bell Atl.-New Jersey, Inc.*, 287 F. Supp. 2d 532, 538 n.8 (D.N.J. 2003) ("To the extent that the parties have submitted documents that are not matters of public record, these materials will convert the motion to dismiss into one for summary judgment if the Court relies on them. … It is within this Court's discretion whether to rely on them or not." (internal citation omitted)).

Here, the Notice of Default letter is not integral to or explicitly relied upon in the TAC. In fact, Plaintiff challenges the authenticity of the Notice of Default and denies ever having received the 2014 letter. (Pl. Opp'n Br. 5); *cf. Schmidt v. Skolas*, 770 F.3d 241, 250 (3d Cir. 2014) (concluding that "taking notice of [certain exhibits attached to the defendant's motion to dismiss] is inconsistent with the rationale of the integral documents exception" because the plaintiff asserted that he never saw the exhibits prior to filing his complaint). Seeing as it is unclear from the docket whether discovery has commenced in this case and given Plaintiff is proceeding *pro se*, we are not inclined to convert Defendant's pre-answer motion to dismiss into a motion for summary judgment. *See Childs v. Meadowlands Basketball Assocs.*, 954 F. Supp. 994, 997 (D.N.J. 1997) (holding that it would be "inappropriate for the court to convert the pre-answer motion to dismiss into a motion for summary judgment" in part because the court "[had] not been advised whether any discovery has taken place in this case"); *Scalercio-isenberg*, No. 20-4501, 2020 WL 5810527, at *2 (D.N.J. Sept. 30, 2020) ("Although the Court may choose to convert the Motion into a motion for summary judgment … the Court will not do so here because no discovery has been conducted and Plaintiffs were not put on notice that the Court might construe the Motion to Dismiss as one for summary judgment." (internal citation omitted)). As such, we decline to consider the Notice of Default at this time.

As the Notice of Default is the basis of Defendants' argument that they have not breached Section 22 of the Security Deed, the Court denies Defendants' motion to dismiss Plaintiff's breach of contract claim as to the Security Deed without prejudice.

### B. Federal Debt Collection Practices Act

As best the Court can discern, Plaintiff next alleges that Defendants' delinquency notice violated Section 1692e(2)(A) of the FDCPA when it listed his balances for the months of July,

7

August, and September 2019 as "unpaid" because he did remit payments for those months but had the August and September payments returned to him. (Third Am. Compl. 9-12, 27).[3]

"To prevail on an FDCPA claim, a plaintiff must prove that (1) [he] is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Jensen v. Pressler & Pressler*, 791 F.3d 413, 417 (3d Cir. 2015) (citation omitted). As before, only the fourth prong is disputed here.

Section 1692e generally provides that debt collectors "may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." *Reichenbach v. Hayes, Johnson & Conley, PLLC*, No. 3:19-CV-00932-ARC, 2019 WL 4511698, at *5 (M.D. Pa. Sept. 19, 2019). "This includes falsely representing 'the character, amount, or legal status of any debt' under § 1692e(2)(A)[.]" *Id.* This provision deals with debt collectors' representations to debtors. We analyze such communications "from the perspective of the least sophisticated debtor." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (quoting *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 454 (3d Cir. 2006)). This low standard "effectuate[s] the basic purpose of the FDCPA: to protect all consumers, the gullible as well as the shrewd." *Id.* (internal quotation marks and alterations omitted). Still, the least sophisticated debtor is held to "a quotient of reasonableness, a basic level of understanding, and a willingness to read with

---

[3] In our prior Opinion, we found that Plaintiff's Section 1692(e) claim with respect to the delinquency notice was not clearly futile because the delinquency notice had two possible interpretations, one of which was inaccurate. (ECF No. 25 at 16). However, Plaintiff does not make any claim that the delinquency notice is subject to two reasonable interpretations in his TAC. Instead, Plaintiff alleges that the delinquency notice was misleading under Section 1692(e) because it conflicted with the notice of servicing transfer and addendum. (Third Am. Compl. 9-10). However, as the Court previously explained, any claims related to the notice of servicing transfer and addendum are barred by the statute of limitations. (ECF No. 25 at 11-13). As such, Plaintiff cannot rely on purported discrepancies between the delinquency notice and notice of servicing transfer and addendum to form the basis for his FDCPA claim. To the extent Plaintiff claims the delinquency notice violated Section 1692e because the notice differed from the notice of servicing transfer and addendum, the Court dismisses this claim.

care." *Knight v. Midland Credit Mgmt. Inc.*, 755 F. App'x 170, 174 (3d Cir. 2018) (quoting *Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 149 (3d Cir. 2013)).

In the instant motion to dismiss, Defendants assert that Plaintiff cannot contend that the delinquency notice's statement that Plaintiff had missed payments was false or a misrepresentation because Plaintiff "admitted he hasn't made payments on the Loan and presumed his debt was cancelled when he allegedly attempted to rescind his Loan back in 2008." (Def. Mot. 13-14). Defendants assert that Plaintiff "nowhere manages to allege how the 'character or amount' of any debt was falsely represented." (*Id.* at 14).

We disagree. The TAC alleges that Plaintiff remitted mortgage payments to PHH for several months in 2019. (Third Am. Compl. 9-10). PHH returned most of those payments to Plaintiff. (*Id.*) However, Plaintiff contends, and Defendants do not dispute, that Defendants retained his July 2019 payment.[4] (*Id.*) ("[T]he Delinquent notices were falsely stated and materially misleading to imply that Mr. Kareem missed all payments throughout calendar year for 2019, even though PHH retained the July 1, 2019 payment."). Presuming that this allegation is true, the delinquency notice, which lists the July 2019 amount as unpaid, may mispresent the amount of debt owed. *See* (ECF No. 31, Ex. I). Therefore, Plaintiff has stated a plausible claim for relief under Section 1692e(2)(A).[5]

### C. Real Estate Settlement Procedures Act (RESPA) and Regulation X

---

[4] It is not clear to the Court the purpose for which PHH retained the July 2019 payment. The November 2019 letter from Defendant NewRez to Plaintiff states only that "[t]he payment of $581.00 received on 07/09/2019 was applied to the suspense account." (ECF No. 31, Ex. H). However, Defendants' do not address this issue, and we must presume that Plaintiff's well-pleaded allegations are true for the purposes of this motion to dismiss.

[5] In our prior Opinion, we concluded that Defendants were entitled to refuse any of Plaintiff's payments that did not bring the loan current. (ECF No. 25 at 15 n.7). We found that: "[t]his conclusion forecloses Plaintiff's argument that Defendants violated 15 U.S.C. § 1692(e) by failing to provide him with an accurate accounting in subsequent billings letters" as "[t]his claim seems to be premised on the fact that the billing letters were allegedly inaccurate because they did not include Plaintiff's *attempted payments*." (*Id.*) (emphasis added). For clarity, we stress that our holding here is limited to Plaintiff's July 2019 payment, which was not an "attempted" payment but was instead allegedly retained by Defendants.

### i. 12 C.F.R. § 1024.35

In our previous Opinion, we construed Plaintiff's claim under 12 C.F.R. § 1024.35(b) as an allegation that Defendants failed to timely respond to his notice of error. (ECF No. 25 at 20). 12 C.F.R. § 1024.35(a) provides:

> A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred. . . . A qualified written request that asserts an error relating to the servicing of a mortgage loan is a notice of error for purposes of this section, and a servicer must comply with all requirements applicable to a notice of error with respect to such qualified written request.

Oddly, Plaintiff does not explicitly reference § 1024.35 in his TAC. Reading the TAC liberally, however, we construe Plaintiff's allegations that: (1) he "sent a timely letter to PHH entitled 'Qualified Written Request' to the Servicer's address that handles the notices of errors"; (2) "PHH did not complete their investigation on this matter until six months later"; (3) "PHH's research letter on his mortgage account was sent to Plaintiff six (6) months later"; and (4) "PHH has been stubbornly resistant and slow to respond in good faith to his legal QWR requests to remove the LPI fees and make adjustments to his escrow account" to constitute a claim under § 1024.35. (Third Am. Compl. 4, 6, 8).

#### 1. Actual Damages

Defendants ask this Court to dismiss Plaintiff's § 1024.35 claim because "Plaintiff failed to properly allege he suffered actual damages." (Def. Mot. 15). Specifically, Defendants assert that Plaintiff "wholly [failed] to connect any emotional distress to his allegations Defendants violated Regulation X by failing to respond to his qualified written request ("QWR")." (*Id.*)

"[D]amages are an essential element in pleading a RESPA claim." *Lloyd v. New Jersey Hous. & Mortg. Fin. Agency*, 845 F. App'x 139, 144 (3d Cir. 2021) (quoting *Renfroe v.*

*Nationstar Mortg., LLC*, 822 F.3d 1241, 1246 (11th Cir. 2016)). There are two types of damages recoverable when a loan servicer fails to comply with its RESPA duties: (1) actual damages and (2) statutory damages. *Bukowski v. Wells Fargo Bank, N.A.*, 757 F. App'x 124, 128 (3d Cir. 2018). For the reasons expressed in our prior opinion, only actual damages are relevant here. *See* (ECF No. 25 at 18-19). To recover actual damages, a borrower must prove that the loan servicer violated a RESPA requirement and that actual damages were sustained as a result. 12 U.S.C. § 2605(f)(1)(A); *Bukowski*, 757 F. App'x at 128. "There must be a 'causal link between the alleged violation and the damages.'" *Lloyd*, 845 F. App'x at 144 (quoting *Renfroe*, 822 F.3d at 1246).

Courts in this district have concluded that an allegation that a debt collector's failure to respond to a QWR letter caused the plaintiff emotional distress, without more, does not establish the causal link necessary to show actual damages. *See Giordano v. MGC Mortg., Inc*, 160 F. Supp. 3d 778, 784-85 (D.N.J. 2016) (holding that a plaintiff's allegations of "non-pecuniary damages caused by the stress, anxiety and emotional distress that occurred when MGC failed to respond to the RFI and QWR letter" were "insufficient" to establish actual damages "as they do not establish that the alleged distress was 'as a result of' the failure to respond to the RF1/QWR letter as opposed to the financial hardships [the plaintiff] was already experiencing"); *Schmidt v. Wells Fargo Bank, N.A.*, No. 2:17-CV-01708, 2019 WL 4943756, at *4 (D.N.J. Oct. 8, 2019). This is because "[i]f a plaintiff simply can allege that failure to respond to a letter caused distress, without more, any RESPA claim would survive a motion to dismiss." *Giordano*, 160 F. Supp. 3d at 785.

Here, Plaintiff makes several allegations of emotional distress in the TAC:

- "Plaintiff alleges along with damages to his escrow account by excessive premiums, Mr. Kareem has sustained actual damages from undergoing emotional

11

stress and anxiety. His health has suffered related to the hours and effort he has spent trying to get PHH to adjust its servicing errors. Whereas, Mr. Kareem incurred stress, weight fluctuations, restless nights and high blood pressure related to PHH's servicing tyranny." (Third Am. Compl. 7-8)

- "Plaintiff alleges that his extreme anxieties come from his concerns that he might lose his home." (*Id.* at 8)

- "Mr. Kareem has been stressed by the added pressures of assisting with the health conditions of his disabled wife. PHH's actions have placed unwarranted mental, emotional and physiological stress on the whole household." (*Id.*)

- "Mr. Kareem re-alleges that at all times PHH's actions were the directly or the proximate cause of his health damages sustained by PHH under the applicable consumer and state laws." (*Id.*)

These allegations still do not show a sufficient causal connection between Plaintiff's emotional distress and Defendants' alleged § 1024.35 violation. Plaintiff has not tied his emotional distress to Defendants' alleged failure to timely respond to his QWR letter, specifically. Rather, Plaintiff alleges that his emotional distress stems from the servicing errors on his account and a general, very understandable, fear that he would lose his home. (Third Am. Compl. 7-8). Further, Plaintiff's conclusory allegation that "PHH's actions were the directly or the proximate cause of his health damages sustained by PHH" is insufficient to show causation. (*Id.*); *see Schmidt*, 2019 WL 4943756, at *4 ("The Court need not accept the conclusory statement that '[t]he failure to respond to the notice caused the plaintiffs additional emotional distress….'"). Without the requisite causal link, Plaintiff cannot show that he suffered any actual

damages from Defendants' purported violation of § 1024.35. As such, we must dismiss Plaintiff's § 1024.35 claim.[6]

### ii. 12 U.S.C. § 2605(k)(1)(A)

Last, Plaintiff alleges that Defendants violated 12 U.S.C. § 2605(k)(1)(A) by charging him forced-placed hazard insurance fees even though he had his own insurance coverage. *See* (Third Am. Compl. 6, 7, 19, 24).

Section 2605(k)(1)(A) provides "[a] servicer of a federally related mortgage shall not . . . obtain force-placed hazard insurance unless there is a reasonable basis to believe the borrower has failed to comply with the loan contract's requirements to maintain property insurance." 12 U.S.C. § 2605(k)(1)(A). Force-placed insurance is "hazard insurance coverage obtained by a servicer of a federally related mortgage when the borrower has failed to maintain or renew hazard insurance on such property as required of the borrower under the terms of the mortgage." *Id.* at § 2605(k)(2). Section 2605(l) provides that a servicer does not have a reasonable basis to obtain force-placed hazard insurance unless:

> (A) the servicer has sent, by first-class mail, a written notice to the borrower containing--
> (i) a reminder of the borrower's obligation to maintain hazard insurance on the property securing the federally related mortgage;
> (ii) a statement that the servicer does not have evidence of insurance coverage of such property;
> (iii) a clear and conspicuous statement of the procedures by which the borrower may demonstrate that the borrower already has insurance coverage; and
> (iv) a statement that the servicer may obtain such coverage at the borrower's expense if the borrower does not provide such demonstration of the borrower's existing coverage in a timely manner;
> (B) the servicer has sent, by first-class mail, a second written notice, at least 30 days after the mailing of the notice under subparagraph (A) that contains all the information described in each clause of such subparagraph; and

---

[6] As Plaintiff was given leave to amend to sufficiently plead his § 1024.35 claim and has failed to do so, we dismiss this claim with prejudice. *See Davis v. Deutsche Bank Nat'l Tr. Co.*, No. 16-5382, 2017 WL 6336473, at *8 (E.D. Pa. Dec. 12, 2017) ("Because Plaintiffs have previously been granted leave to amend their complaint to 'set[ ] forth a more specific damages claim providing a causal connection between Ocwen's actions and Plaintiffs' damages' and have failed to do so despite this Court's express invitation, no further leave to amend will be granted.").

13

>    (C) the servicer has not received from the borrower any demonstration of hazard insurance coverage for the property securing the mortgage by the end of the 15-day period beginning on the date the notice under subparagraph (B) was sent by the servicer.

Defendants put forth two main arguments for dismissing Plaintiff's § 2605 claim: (1) Plaintiff failed to allege that Defendants did not have a reasonable basis for obtaining force-placed insurance on Plaintiff's property; and (2) Defendants had a reasonable basis under § 2605(l) for obtaining hazard insurance coverage. (Def. Mot. 18-20).

With respect to Defendants' first argument, we find that Plaintiff has adequately alleged that Defendants lacked a reasonable basis for obtaining hazard insurance for his property. Admittedly, Plaintiff's complaint is not a model of clarity. Construing the TAC liberally, however, we interpret Plaintiff's allegations that PHH "failed to perform the requisite investigation prior to casting such [LPI] fees and costs on his account," "largely ignored his compliance in maintaining the hazard insurance," and "prematurely added additional LPI fees without making an investigation for hazard insurance coverage" to be assertions that PHH did not have a "reasonable basis" under § 2605(l) for imposing forced-place hazard insurance on Plaintiff's property. (*Id.* at 7, 19, 24). Plaintiff also appears to allege that Ocwen obtained forced-place insurance for Plaintiff's property dating back to 2017 without his knowledge. (*Id.* at 6). These factual allegations are sufficient to allow his § 2605 claim to survive a motion to dismiss.

To support their second argument, Defendants attach several exhibits to their motion to dismiss that purportedly show that they complied with the requirements of § 2605(l). (*Id.*) The exhibits consist of three letters allegedly sent by Ocwen to Plaintiff in 2015 that instruct Plaintiff to provide Ocwen with proof of hazard insurance for Plaintiff's property and advising Plaintiff that, if no proof was provided, Ocwen could obtain its own hazard insurance for the property at Plaintiff's expense. (Def. Mot., Exs. C-E). In their motion to dismiss, Defendants note that

"[w]hile the previously referenced notices were from 2015, Defendants have continued to send similar such letters to Plaintiff while they have serviced the loan." (*Id.* at 19).

It may be true that Defendants had a reasonable basis for obtaining force-placed insurance for Plaintiff's property. However, as above, we decline to consider Defendants' attached exhibits, which are neither integral to nor explicitly relied on in the complaint, at the motion to dismiss stage. The resolution of this issue requires a fact-intensive inquiry and is therefore better addressed at the summary judgment stage, after the parties have the benefit of discovery. *Cf. Dennis v. Ocwen Loan Servicing LLC*, No. 3:16-CV-836-BH, 2017 WL 4682143, at *12 (N.D. Tex. Oct. 17, 2017) (finding that a loan servicer was entitled to summary judgment with respect to the plaintiff's claim that the servicer improperly obtained forced-place insurance for her property where the plaintiff failed to show that she had provided the servicer with notice of an existing hazard policy). Accordingly, we deny without prejudice Defendants' motion to dismiss the Section 2605(k)(1)(A) claim.

### IV.   CONCLUSION

For the reasons expressed above, Defendants' motion to dismiss is **GRANTED in part** and **DENIED in part**. An order follows.

Dated: 02/28/2022

/s/Robert B. Kugler
ROBERT B. KUGLER
United States District Judge