IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| HUSSAIN KAREEM, | : |
| Plaintiff, | : |
| | : Civil No. 20-7846 (RBK/MJS) |
| v. | : |
| | : **OPINION** |
| PHH MORTGAGE CORPORATION, *et al.*, | : |
| Defendants. | : |

**KUGLER**, United States District Judge:

This matter comes before the Court on Defendants' Motion for Summary Judgment (the "Motion" or "Mot.") (ECF No. 97), pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth, Defendants' Motion is **GRANTED**.

## I. BACKGROUND

### A. Procedural Background

On June 26, 2020, Plaintiff, who is proceeding *pro se*, filed a complaint in this Court asserting claims against Defendant PHH Mortgage Corp. (ECF No. 1). On July 22, 2020, Plaintiff amended his complaint to add Defendant NewRez LLC ("NewRez"). (ECF No. 3).

On September 30, 2020, Defendants moved to dismiss the amended complaint. (ECF No. 10). On December 1, 2020, Plaintiff filed a motion for leave to file a Second Amended Complaint in response to the motion to dismiss, (ECF No. 17), which Defendants opposed. (ECF No. 20). In an Opinion and Order on May 24, 2021, this Court denied Defendants' motion to dismiss as moot, granted in part Plaintiff's motion to amend, and dismissed with prejudice several of Plaintiff's claims. (ECF Nos. 25–26). Among those claims dismissed with prejudice—

1

as barred by the applicable statute of limitations—were those brought under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq*. and based on a notice of servicing transfer letter and addendum that Plaintiff received on or about June 4, 2019. (ECF No. 25 at 11–13).

On June 22, 2021, Plaintiff filed a Third Amended Complaint ("Third Am. Compl."). (ECF No. 29).[1] Defendants filed a motion to dismiss the Third Amended Complaint on August 4, 2021 (ECF No. 35), which Plaintiff opposed. (ECF No. 37). In an Opinion and Order on February 28, 2022, this Court granted in part and denied in part Defendants' motion to dismiss. (ECF. Nos. 44–45). The Court dismissed with prejudice six of Plaintiff's claims and allowed the Plaintiff to continue pursuing three others: (1) that Defendants breached their contract with Plaintiff—specifically, Section 22 of the Security Deed for the property at issue in this case—by failing to notify him of his rights before Defendants tried to accelerate payments on his mortgage; (2) that Defendants violated Section 1692e(2)(A) of the FDCPA by misrepresenting the amount of debt he owed; and (3) that Defendants violated Section 2605(k)(1)(A) of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et* seq., by charging him forced-placed hazard insurance fees even though he had his own insurance coverage. (ECF No. 45 at 6–9, 13–15).

The parties then engaged in discovery, which was completed by May 5, 2023. (ECF No. 96). On May 10, 2023, Defendants filed the present Motion and corresponding brief ("Def.'s Brief"). (ECF No. 97-1). After requesting and receiving two extensions of time to file a reply (ECF Nos. 98–101), Plaintiff opposed the Motion in a brief mailed on July 10, 2023 (ECF Nos.

---

[1] Plaintiff's self-titled Third Amended Complaint was actually the second amended complaint in this case. For simplicity, and consistent with our prior opinion (ECF No. 44), we continue to refer to the instant complaint as the Third Amended Complaint.

2

102, 103-3) and received by the Court on July 26, 2023 ("Opposition Brief"). (ECF No. 103). Defendants filed a reply brief on August 11, 2023 ("Def.'s Reply Brief") (ECF No. 104), to which Plaintiff again responded in identical filings on August 22 and 23, 2023 ("Second Opposition Brief"). (ECF Nos. 105–06).

Along with their Motion, Defendants filed a Statement of Material Facts Not in Dispute ("Def.'s Statement of Material Facts") (ECF No. 97-21), as required by New Jersey Local Civil Rule 56.1. Plaintiff never furnished a responsive statement of material facts, as required by the same rule. Defendants also submitted the declaration of a senior loan analyst employed by PHH's parent company ("PHH Declaration" or "PHH Decl.") (ECF No. 97-2) that asserts the same facts as laid out in the Defendants' Statement of Material Facts.

Because Plaintiff failed to address Defendants' Statement of Material Facts, the Court considers those facts undisputed and Plaintiff to have admitted to them. The Federal Rules of Civil Procedure give courts discretion in this regard. Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion."). Local Civil Rule 56.1(a) contains mandatory language that "any material fact not disputed [in a responsive statement of material facts] shall be deemed undisputed for purposes of the summary judgment motion." To be accepted by the court, however, such facts must still be supported by material in the record. *See*, *e.g.*, *Khan v. City of Bayonne*, 2021 WL 2709539 at *1 n.2 (D.N.J. June 30, 2021) (where *pro se* plaintiff failed to respond, court deemed moving party's statement of material facts admitted where "adequately supported by the record"). Here, Defendants amply support their Statement of Material Facts with citations to the PHH Declaration and exhibits containing the Security Deed and numerous letters sent to Plaintiff

regarding his property. Further, even after being advised in Defendants' Reply Brief of his failure to respond to Defendants' Statement of Material Facts, (Reply Brief at 1), Plaintiff submitted a Second Opposition Brief with the Court but did not file a responsive statement.[2] The Court therefore incorporates the facts from Defendants' Statement of Material Facts and PHH Declaration into the following description of this dispute.

### B. Factual Background

#### i. *Servicing of Plaintiff's Loan*

As described in this Court's prior opinion on February 28, 2022, this case stems from an adjustable rate note that Plaintiff Hussain Kareem, a resident of Georgia, executed in July 2006 with American Brokers Conduit for $159,200 to refinance his home. (Third Am. Compl. 2). To secure this loan, Mr. Kareem executed a Security Deed for his property in favor of Mortgage Electronic Registration Systems, Inc. (the "Security Deed") (PHH Decl., Ex. B); *see* (Third Am. Compl. 2). Around September 2008, Mr. Kareem claims that he attempted to rescind his loan under a Truth in Lending Act rescission procedure and halted all payments on his mortgage until he was informed of the outcome. (Third Am. Compl. 2). He presumed his mortgage debt was cancelled by the rescission notice. (*Id.*) Mr. Kareem's loan became delinquent in July 2009 and has been in a state of serial delinquency ever since. (Def.'s Statement of Material Facts ¶¶ 5–7).

Ocwen Loan Servicing, LLC ("Ocwen") previously serviced Mr. Kareem's loan until its merger with PHH Mortgage Corporation ("PHH") effective June 1, 2019. (*Id*. ¶ 4). Due to Mr. Kareem's delinquency, Ocwen sent Mr. Kareem a notice of default letter on October 14, 2014 ("2014 Default Letter"). (PHH Decl., Ex. E); (Def.'s Statement of Material Facts ¶ 8). The letter

---

[2] All citations to specific pages of the parties' pleadings, briefs, and exhibits use the page numbers in the documents as opposed to those generated automatically by the ECF system.

states that Mr. Kareem is in default; that he has the right to cure the default by paying $56,213.04, the amount then due; that he has 30 days to cure the default, after which time Ocwen may exercise its right to accelerate the mortgage payments and foreclose on the property; and that Mr. Kareem has the right to reinstate the loan after acceleration and the right to bring a court action to assert the non-existence of a default. (2014 Default Letter at 1–2); (Def.'s Statement of Material Facts ¶¶ 9–13). Mr. Kareem denies he ever received this letter. (Opposition Brief at 41–42).

After PHH began servicing Mr. Kareem's loan in 2019, it sent him a letter dated June 4, 2019, notifying him of his new mortgage servicer and including in an addendum the status and terms of the loan. (Opposition Brief, Exs. A, B). The addendum stated that "[a]s of the 6/1/2019 transfer date, the current required monthly payment in connection with this account is $580.51," with the next monthly payment due on July 1, 2019. (*Id.*).

Thereafter, Mr. Kareem submitted payments in the amount of $581.00 for the months of June, July, August, and September of 2019. (Def.'s Statement of Material Facts ¶ 18). PHH returned the June, August, and September payments to Mr. Kareem because they were insufficient to bring his account current." (*Id.* ¶ 19). For some reason, PHH decided to retain the July payment and hold it in a suspense account, where the funds were to be held until Mr. Kareem brought his loan current. (*Id.*)

Soon thereafter, PHH sent Mr. Kareem a letter dated October 16, 2019, that included both a "monthly mortgage statement" with information about the status of his loan and a "Delinquency Notice" ("October 2019 Letter"). (PHH Decl., Ex. D). The monthly statement listed the amount due to bring the loan current, the past amount due, the due date of Mr. Kareem's next monthly payment, that Mr. Kareem's last full payment was applied to the

5

monthly payment due on June 1, 2009, and that Mr. Kareem's loan was currently due for the July 1, 2009, payment. (*Id.* at 1); (Def.'s Statement of Material Facts ¶ 15). The Delinquency Notice, meanwhile, indicated that Mr. Kareem was delinquent on his mortgage payments by 3,759 days and listed the following "recent account history":

- Payment due on 05/01/19: Unpaid balance of $785.34
- Payment due on 06/01/19: Unpaid balance of $785.34
- Payment due on 07/01/19: Unpaid balance of $785.34
- Payment due on 08/01/19: Unpaid balance of $785.34
- Payment due on 09/01/19: Unpaid balance of $835.65
- Payment due on 10/01/19: Unpaid balance of $835.65
- Current payment due 11/01/19: $748.63
- **Total: $108,243.69 due. You must pay this amount to bring your loan current.**

(*Id.* at 5) (emphasis in original).

In February 2020, Mr. Kareem was sent a letter informing him that PHH had retained a law firm in connection with his loan. (Third Am. Compl. 4) (citing ECF No. 1-1, Ex. J). This law firm sent a letter to Mr. Kareem on May 22, 2020, indicating that his mortgage loan debt was immediately due and payable in full. (*Id.*) It also indicated that a foreclosure sale for his property was scheduled to take place on July 7, 2020. (*Id.*) On May 27, 2020, Mr. Kareem responded in a letter entitled "Qualified Written Request" accusing Defendants of engaging in unfair debt collection practices, among other allegations. (*Id.*) (citing ECF No. 1-1, Ex. K).

As of the date of the Motion, Mr. Kareem has not made a payment in an amount to bring the loan current, and his loan remains in default. (Def.'s Statement of Material Facts ¶¶ 20–21). There has been no foreclosure sale on his property. (Def.'s Brief 14).

### ii. *Lender-Placed Hazard Insurance*

A separate claim by Mr. Kareem revolves around hazard insurance that Defendants purchased for Mr. Kareem's property at Mr. Kareem's expense. The Security Deed for the

property requires the borrower to keep the property "insured against loss by fire, hazards included within the term 'extended coverage,' and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance." (Def.'s Statement of Material Facts ¶ 22) (citing Security Deed § 5). If the borrower fails to maintain coverage, "Lender may obtain insurance coverage, at Lender's option and Borrower's expense." (*Id*. ¶ 23). Further, the cost of lender-placed insurance "shall become additional debt of Borrower secured by this Security Instrument" and "if Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices." (*Id*.).

In March 2015, Ocwen sent the first in a series of notices to Mr. Kareem advising him that his hazard insurance had expired, that he was required to maintain hazard insurance on the property, and that Ocwen would buy insurance if Mr. Kareem failed to provide evidence of a current policy. (*Id*. ¶¶ 24–26) (citing PHH Decl., Ex. G). These notices also advised Mr. Kareem how he could show proof of insurance, via fax, mail, or a website. (*Id*. ¶ 25). After sending Mr. Kareem two more written notices to the same effect without a response, Ocwen purchased hazard insurance for the property effective March 2015 to March 2016. (*Id*. ¶¶ 27–31) (citing PHH Decl., Exs. H, I, J).

This pattern repeated for several more years. In 2016, 2017, 2018, and 2019, Ocwen sent written notices to Mr. Kareem of his need to maintain hazard insurance, received no response, and renewed the lender-placed hazard insurance on the property. (*Id*. ¶¶ 32–37) (citing PHH Decl., Exs. K, L, M, N). In May 2019, Ocwen notified Mr. Kareem that it was cancelling its latest policy, effective June 1, 2019, because the loan servicing was transferring to PHH. (*Id*. ¶ 38) (citing PHH Decl., Ex. O). PHH subsequently obtained hazard insurance on the property and

informed Mr. Kareem of the new policy on August 13, 2019. (*Id.* ¶ 39) (citing PHH Decl., Ex. P).

Mr. Kareem finally provided evidence of acceptable insurance three days later, on August 16, 2019. (*Id.* ¶ 40) (citing PHH Decl., Ex. Q). The policy Mr. Kareem had purchased was effective April 11, 2019 to April 11, 2020. (*Id.*). On August, 23, 2019, PHH notified Mr. Kareem that its lender-placed policy was cancelled, effective June 1, 2019, and that Mr. Kareem would receive a refund for the cost of PHH's policy to his escrow account. (*Id.* ¶ 41) (citing PHH Decl., Ex. R).

## II. LEGAL STANDARD

### A. Summary Judgment Under Rule 56

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it will "affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a "reasonable jury could return a verdict for the nonmoving party." *Id.* The movant bears the burden of showing the absence of a "genuine issue of material fact." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996). The party may satisfy its burden by "produc[ing] evidence showing the absence of a genuine issue of material fact" or "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant makes this showing, the nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmovant must "point

to concrete evidence in the record that supports each and every essential element of his case." *Orsatti v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995).

"When opposing summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'" *Corliss v. Varner*, 247 F. App'x 353, 354 (3d Cir. 2007) (quoting *Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2002)). The Court's role is not to weigh the evidence and decide the truth, but to determine if there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In making that decision, "[a]ll facts and inferences are construed in the light most favorable to the non-moving party," *Boyle v. Cnty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998), and credibility determinations are for the fact finder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

Importantly, only evidence "capable of being admissible at trial" may be considered on a motion for summary judgment. *Philbin v. Trans Union Corp.*, 101 F.3d 957, 961 n.1 (3d Cir. 1996); Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."). Federal Rule of Civil Procedure 56(c) directs that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to materials in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). Assertions in briefs are not record evidence unless agreed to by the adverse party. *Dabone v. Thornburgh*, 734 F. Supp. 195, 199 (E.D. Pa. 1990) (citing *Braden v. University of Pittsburgh*, 477 F.2d 1, 6 (3d Cir. 1973)); *see also Lassoff v. New Jersey*,

2007 WL 2156360, at *2 (D.N.J. July 25, 2007) ("Bald assertions in briefs are not facts and will not defeat summary judgment.").

### B. *Pro Se* Litigants

Generally, "[a] document filed *pro se* is to be liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted). Despite this liberal interpretation, however, the same summary judgment standard applies to *pro se* litigants. *Dinnerstein v. Burlington Cnty. Coll.*, 2017 WL 5593776, at *4 (D.N.J. Nov. 21, 2017), *aff'd*, 764 F. App'x 214 (3d Cir. 2019). "Proceeding *pro se* does not otherwise relieve a litigant of the usual requirements of summary judgment, and a *pro se* party's bald assertions unsupported by evidence, are insufficient to overcome a motion for summary judgment." *Id.*; *see also Watson v. Philadelphia Hous. Auth.*, 629 F. Supp. 2d 481, 485 (E.D. Pa. 2009) ("The party opposing summary judgment, whether *pro se* or counseled, must present evidence, through affidavits, depositions, or admissions on file, to show that there is a genuine issue for trial.").

### C. Amending Complaint at Summary Judgment Stage

"A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." *Bell v. City of Philadelphia*, 275 F. App'x 157, 160 (3d Cir. 2008) (internal quotation marks omitted). When, as here, a court grants defendants' motion for summary judgment, a plaintiff who wishes to assert new claims must file a motion under Federal Rule of Civil Procedure 59(e). *South Jersey Gas Co. v. Mueller Co., Ltd.*, 429 F. App'x 128, 130–31 (3d Cir. 2011) (holding that Rule 59(e) was the proper vehicle to seek to amend a complaint following dismissal on summary judgment); *see also Holland v. Macerich*, 2011 WL 6934969, at *4 (D.N.J. Dec. 29, 2011), *aff'd sub nom. Holland v. Simon Prop. Grp., Inc.*, 495 F. App'x 270 (3d Cir. 2012).

**III.     DISCUSSION**

As a preliminary matter, the Court will consider the entirety of Plaintiff's 47-page Opposition Brief despite Defendants' request that the Court disregard the last seven pages. (Reply Brief 1, 3). While true that Plaintiff did not comply with the 40-page limit for briefs established by Local Civil Rule 7.2(b), the Court is mindful of its duty to construe the filings of *pro se* litigants liberally. *Erickson*, 551 U.S. at 94. Regardless, nothing in the last seven pages of Plaintiff's brief sways the Court's decision compared to if those pages were not considered.

We turn now to Plantiff's three claims that are the subject of the present Motion: (1) that Defendants breached their contract with Plaintiff—specifically, Section 22 of the Security Deed for the property at issue in this case—by failing to notify him of his rights before Defendants tried to accelerate payments on his mortgage; (2) that Defendants violated Section 1692e(2)(A) of the FDCPA by misrepresenting in the Delinquency Notice the amount of debt Plaintiff owed; and (3) that Defendants violated Section 2605(k)(1)(A) of RESPA by charging Plaintiff forced-placed hazard insurance fees even though he had his own insurance coverage. (ECF No. 45 at 6–9, 13–15).

**A.  Breach of Contract Claim**

Plaintiff alleges that through the October 2019 Letter and 2020 letter from the retained law firm, PHH sought to accelerate payments and foreclose on his mortgage without providing him the proper notice required under Section 22 of the Security Deed. (Third Am. Compl. 20–21, 25). Section 22 provides, in relevant part:

> Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the

11

>date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.

Defendants respond that they did, in fact, comply with Section 22 when they sent Plaintiff the 2014 Default Notice. (Def.'s Brief at 12–14). As described, the 2014 Default Notice contains each provision required by the Security Deed. Plaintiff denies, however, that he ever received that letter. (Opposition at 41–42).

Plaintiff's denial cannot be credited by this Court. His denial appears only in his brief opposing summary judgment and thus is not properly in evidence. *Dabone*, 734 F. Supp. at 199 ("Assertions in briefs are not record evidence unless agreed to by the adverse party."). Because Plaintiff's denial is not in evidence, the only evidence before the Court is that Defendants sent— and Plaintiff received—the 2014 Default Notice that provides the full notice required by the Security Deed. As such, there is no genuine issue of material fact regarding Plaintiff's breach of contract claim and Defendants are entitled to judgment as a matter of law.

### B. Federal Debt Collection Practices Act (FDCPA) Claim

Plaintiff next alleges that Defendants violated Section 1692e(2)(A) when in the Delinquency Notice that is part of the October 2019 Letter they listed Plaintiff's balance for the month of July 2019 as "unpaid" despite the fact that Defendants retained the $581.00 payment that Plaintiff made for that month. (Third Am. Compl. 9–10, 12).[3] Defendants counter that the

---

[3] In his Third Amended Complaint and again in his Opposition, Plaintiff raises two other theories of liability under the FDCPA. We have rejected both theories in our previous Opinions and will not consider them further. First, Plaintiff raises alleged discrepancies between the Delinquency Notice and the June 4, 2019, notice of servicing transfer and addendum. (Third Am. Compl. 9–10, 12); (Opposition 3–5, 7). However, any claim premised on the notice of servicing transfer and addendum is barred by the applicable statute of limitations. (ECF No. 25 at 11–13). Second, Plaintiff alleges that the Delinquency Notice also misrepresents that he missed payments for

Delinquency Notice is not misleading when read together with the longer mailing of which it was a part. (Def.'s Brief 14–18).

"To prevail on an FDCPA claim, a plaintiff must prove that (1) [he] is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Jensen v. Pressler & Pressler*, 791 F.3d 413, 417 (3d Cir. 2015) (citation omitted). Only the fourth prong is disputed here.

Section 1692e generally provides that debt collectors "may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." *Reichenbach v. Hayes, Johnson & Conley, PLLC*, 2019 WL 4511698, at *5 (M.D. Pa. Sept. 19, 2019). Among the code section's specific prohibitions are "[t]he false representation of . . . the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A).

We analyze such communications "from the perspective of the least sophisticated debtor." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008). "The standard is an objective one, meaning that the specific plaintiff need not prove that [he] was actually confused or misled, only that the objective least sophisticated debtor would be." *Jensen*, 791 F.3d at 419. This low standard "effectuate[s] the basic purpose of the FDCPA: to protect all consumers, the gullible as well as the shrewd." *Rosenau*, 539 F.3d at 221 (internal quotation marks and alterations omitted). "[A] collection letter is deceptive when it can be reasonably read to have two or more different meanings, one of which is inaccurate." *Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 149 (3d Cir. 2013).

---

June, August, and September of 2019. (Third Am. Compl. 9–10); (Opposition 4–5). However, we limited Plaintiff's FDCPA claim to Defendants' representations about the July 2019 payment only, as that was the only payment retained by Defendants. (ECF No. 44 at 9 n.5).

> Nevertheless:
>
> > [T]he [least sophisticated debtor] standard does not go so far as to provide solace to the willfully blind or non-observant. The debtor is still held to a quotient of reasonableness, a basic level of understanding, and a willingness to read with care, and the debt collector accordingly cannot be held liable for bizarre or idiosyncratic interpretations. For example, even the "least sophisticated debtor" is expected to read any notice in its entirety.

*Id*. (internal quotation marks and citations omitted).

Here, Plaintiff premises his FDCPA claim on the notion that the Delinquency Notice was a stand-alone document. In both his Third Amended Complaint and Opposition Brief, Plaintiff attaches only the one-page Delinquency Notice as an exhibit. (Third. Am. Compl., Ex. I); (Opposition, Ex. I). However, as Defendants point out, the Delinquency Notice was actually the fifth of six pages in the October 2019 Letter, which also included Plaintiff's monthly mortgage statement. (PHH Decl., Ex. D).

When the letter is read in its entirety, as is expected of even the least sophisticated debtor, *Caprio*, 709 F.3d at 149, the Court cannot conclude that even the least sophisticated debtor would be confused or misled by Defendants' representation about the status of Plaintiff's July 2019 payment. The monthly mortgage statement, which appears on the first page of the letter, lists in bold the amount due as $108,243.69. Lower on the page, a box entitled "Important Messages" contains the following information: "You are currently due for the 7-1-2009 payment. Your last full payment was applied to the payment due 6-1-2009." (PHH Decl., Ex. D at 1). The next sentence reads: "Partial Payments: Any partial payments that you make are not applied to your mortgage, but instead are held in a separate suspense account." (*Id*.).[4] A separate box on the

---

[4] PHH was entitled to hold any partial payment in a suspense account pursuant to Section 1 of the Security Deed, which reads:

14

same page entitled "Past Payments Breakdown" shows a balance of $644.98 paid year to date for the line item "Partial Payments (Unapplied)." (*Id.*).

Taken together, this information communicates that Defendants would not apply any payment to the mortgage if it was less than the $108,243.69 then due, but rather hold it in a suspense account. Further, even if a partial payment was applied to the mortgage, the next month to which it would apply would be July 2009. Turning then to the Delinquency Notice on the fifth page of the letter, there is nothing misleading or confusing about showing the balance for July 2019 as "unpaid." The Plaintiff would have understood had he read the first page that the amount he paid in July 2019 amounted to a partial payment and therefore was not applied to his July 2019 mortgage payment, but instead held in a suspense account, which showed a positive balance.

The Court finds that Defendants' October 2019 Letter, when read in its entirety, is not susceptible to two possible meanings, one of which is inaccurate. *Caprio*, 709 F.3d at 149. Therefore, the Court finds that even the least sophisticated debtor would not be confused or misled by the letter. *Jensen*, 791 F.3d at 419. In response to Defendants' evidence that shows the absence of a genuine issue of material fact on Plaintiff's FDCPA claim, Plaintiff has failed to present contrary evidence that would create a genuine issue for trial. Defendants are entitled to judgment as a matter of law.

---

Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. . . . Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current.

15

### C. Real Estate Settlement Procedures Act (RESPA) Claim

Plaintiff also alleges that Defendants violated 12 U.S.C. § 2605(k)(1)(A) by charging him forced-placed hazard insurance fees even though he had his own insurance coverage. (Third Am. Compl. 6–7, 19, 24); (Opposition 5–6, 18–20, 24). Defendants respond that they had a reasonable basis to impose hazard insurance, which they did in compliance with RESPA, and Plaintiff has presented no evidence to the contrary. (Def.'s Brief 19–22).

Section 2605(k)(1)(A) provides that "[a] servicer of a federally related mortgage shall not . . . obtain force-placed hazard insurance unless there is a reasonable basis to believe the borrower has failed to comply with the loan contract's requirements to maintain property insurance." 12 U.S.C. § 2605(k)(1)(A). Force-placed insurance is "hazard insurance coverage obtained by a servicer of a federally related mortgage when the borrower has failed to maintain or renew hazard insurance on such property as required of the borrower under the terms of the mortgage." *Id.* at § 2605(k)(2). Section 2605(l)(1) provides that a servicer does not have a reasonable basis to obtain force-placed hazard insurance unless:

> (A) the servicer has sent, by first-class mail, a written notice to the borrower containing—
>
>> (i) a reminder of the borrower's obligation to maintain hazard insurance on the property securing the federally related mortgage;
>> (ii) a statement that the servicer does not have evidence of insurance coverage of such property;
>> (iii) a clear and conspicuous statement of the procedures by which the borrower may demonstrate that the borrower already has insurance coverage; and
>> (iv) a statement that the servicer may obtain such coverage at the borrower's expense if the borrower does not provide such demonstration of the borrower's existing coverage in a timely manner;
>
> (B) the servicer has sent, by first-class mail, a second written notice, at least 30 days after the mailing of the notice under subparagraph (A) that contains all the information described in each clause of such subparagraph; and

16

> (C) the servicer has not received from the borrower any demonstration of hazard insurance coverage for the property securing the mortgage by the end of the 15-day period beginning on the date the notice under subparagraph (B) was sent by the servicer.

12 U.S.C. § 2605(l)(1)(A)–(C).

The Security Deed, meanwhile, requires Plaintiff to maintain hazard insurance on the property and explains that "[i]f Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense." (Security Deed § 5). The Security Deed continues that the cost of lender-placed insurance "shall become additional debt of Borrower secured by this Security Instrument" and that "if Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices." (*Id.*).

The evidence in record before this Court consists of the following:

- The Security Deed required Plaintiff to maintain hazard insurance on the property and gave Defendants the right to obtain insurance if Plaintiff failed to maintain coverage. (Security Deed § 5).

- Defendants' March 2015 letter mailed to Plaintiff contained all the information required under 12 U.S.C. § 2605(l)(1)(A). (PHH Decl., Ex. G).

- Defendants mailed not one, but two follow-up letters to Plaintiff at least 30 days after the first notice, thereby complying with 12 U.S.C. § 2605(l)(1)(B). (*Id.*, Exs. H, I).

- Defendants' purchased insurance for the property only after not receiving proof of hazard insurance coverage from Plaintiff for at least 15 days from the date of the last mailing, thereby complying with 12 U.S.C. § 2605(l)(1)(C). (*Id.*, Ex. J).

17

- Defendants continued to mail similar letters to Plaintiff and continued to renew hazard insurance on the property after not receiving proof of insurance from Plaintiff in 2016, 2017, 2018, and 2019. (*Id.*, Exs. K, L, M, N, P).

- When Plaintiff finally provided evidence of acceptable insurance through Amica on August 16, 2019, Defendants cancelled their lender-placed insurance policy and advised Plaintiff they would refund him the cost of that policy. (*Id.*, Exs. Q, R).

Plaintiff claims that he continuously maintained hazard insurance during the period at issue. (*See*, *e.g.*, Third Am. Compl. 7 ("Prior to Amica, other insurance carriers covered his home in which he gave this information to PHH.")). But Plaintiff fails to produce any proof whatsoever of those purported policies or that he notified Defendants of such policies.

The undisputed record evidence therefore indicates that Defendants followed to the letter the RESPA provisions related to lender-placed hazard insurance. The Court will not credit Plaintiff's bald assertions to the contrary in his complaint and brief. *See Lassoff*, 2007 WL 2156360, at *2 ("Bald assertions in briefs are not facts and will not defeat summary judgment."). There is no genuine issue for trial on this claim, and Defendants are entitled to judgment as a matter of law.

### D. Realleged and Newly Raised Claims

In his Opposition Brief, Plaintiff realleges claims from his Third Amended Complaint that did not survive this Court's prior Orders and Opinions, such as slander of title. (Opposition 40–41, 44). He also alleges for the first time a fraudulent concealment claim, (Opposition 17, 37, 44–46), and liability for NewRez under a principal-agent theory. (Opposition 10–12).

The Court will not consider these claims at this time. The Court was clear in its Order on February 28, 2022 (ECF No. 45), that the breach of contract, FDCPA, and RESPA claims were

all that survived Defendants' second Motion to Dismiss (ECF No. 35). As for the new claims, "[a] plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." *Bell*, 275 F. App'x at 160. If Plaintiff wishes to pursue these new claims, he may do so pursuant to Federal Rule of Civil Procedure 59(e) by filing a motion to alter or amend the judgment of this Court, expressed in this Opinion, within 28 days.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is **GRANTED**. An appropriate order follows.

Dated: December 8, 2023

ROBERT B. KUGLER
United States District Judge